PER CURIAM:
Claimant brought this action for damage to their real property allegedly caused by the negligent maintenance of a drainage ditch adjacent to County Route 13/9, locally known as Dalewood Drive, in Lavalette, Wayne County. This portion of County Route 13/9 is maintained by the respondent in Wayne County. The Court is of the opinion to make an award in this claim for the reasons more fully set forth below.
Claimants ’ residence is located adj acent to County Route 13/9 in Lavalette, Wayne County. They purchased the 1.69 acres of property approximately nine or ten years ago with the house already built on the property. At this location, County Route 13/9 is a paved secondary road that is not quite wide enough to be considered a two-lane road. In most locations, an oncoming vehicle must pull off the road and let the other vehicle pass. It is not marked with a traditional center line nor does it have white lines on the edges. County Route 13/9 is in front of claimants’ house and there is a small creek behind the house. The ditch line at issue in this case is on the opposite side of County Route 13/9 adjacent to the road. There is a hillside above the ditch line and the ditch line is the drainage area for the water coming from the hillside as well as from the surface of the road. Claimants’ home is located opposite the ditch line and below the grade of the road. The Lavalette Public Service District has a sewage collection line which runs along County Route 13/9 underneath the ditch line. Mr. Prichard testified that he believes the sewer line pipe is a plastic pipe which is one or two inches in diameter. This sewer line was put in approximately nine to ten years ago. In May 2001, the Lavalette Public Service District put in a new lift station on the opposite side of the road from claimants’ home. A sewer line connection broke approximately three or four years ago which caused a portion of the road to slip and a small portion of the claimant’s land as well. This slip occurred on the other end of the claimant’s yard opposite the slip at issue in this claim. That slip problem was resolved and is not at issue in this claim. There is also a water line which runs adjacent to County Route 13/9 in front of the claimants’ home. When the claimants first bought their home, they had a load of sand and a load of topsoil brought in and placed on the property and leveled out. The claimants also placed railroad cross ties in the backyard to level the property so that they could place a fence between their home and the creek. Claimants did not make any other alterations to their property. However, Mr. Prichard put in a drainage system to drain the water coming off the roof of their house. The water comes down the gutter, through a pipe that is connected to *89 an elbow and this elbow connects to another pipe which runs down hill and into the creek. Mr. Prichard testified that their pipe was not leaking, and, in his opinion, this water line was not causing the slip due to both its location and the fact that once the slip occurred, it exposed the pipe which showed that there was no leak.
Claimants started having problems with their property slipping in late May or early June of 2000. Mrs. Prichard testified that the ditch line across the road from her home began to hold water in late April or early May of 2000. According to the claimants, there were several heavy rains from approximately April or May of 2000 through the end of June 2000. There was a very large hump with a large rock underneath it that was blocking the ditch and preventing the water from running through the ditch line. After the heavy rains from April through June of 2000, the water was trapped so that it became a small pool. This resulted in an extraordinary amount of water being trapped in the ditch line for an extended period of time. Mrs. Prichard called the respondent to come out to the location where the water was trapped sometime in late June 2000. She testified that no one responded until after she had made numerous telephone calls. Then respondent attempted to clean out the ditch line. According to Mrs. Prichard, the respondent used a machine with a large rubber wheel which it ran up and down the ditch line to lower the surface of the ditch. Respondent’s actions did not remove the large rock which was the problem causing the water to be trapped. Mrs. Prichard testified that the water would get as deep as eighteen inches at times. The water would be backed up as far as fifty to seventy-five feet from the large rock at times. In addition to the water collecting in the ditch line, silt and mud would also collect. According to the claimants, when the water would dry up from the spring and summer heat, the next rain would simply start the problem over again. The longer the water was trapped in the ditch, the more the slip progressed. The slip started getting close to the claimants’ home and extended further down their yard. Mrs. Prichard called the respondent one more time to have the ditch cleaned out. However, respondent only cleaned out some mud and silt which was very little help because it did not remove the large rock which was blocking the water from flowing through the ditch line. By late July 2000, claimants’ property was seriously damaged by the slip. The slip extended from the front of their yard next to the road to the edge of their back yard near the creek. Finally, Mr. Prichard and Mrs. Prichard’s cousin used shovels and a mattock to remove the large rock and remove the dirt which was causing the water to pool. Once this was done, the water then flowed through the ditch line and claimants have not had any trouble with water backing up in the ditch line. Furthermore, the slip did not progress any further and no more water was seeping from the slip in their yard. However, there was extensive damage done to their property before they cleared the ditch line. The claimants submitted a repair estimate in the amount of $6,000.00 from Robert Smith Excavating representing the cost to repair the slip. Mrs. Prichard testified that Mr. Smith would have to use heavy equipment to remove a great deal of the dirt and dig down to the base of the slip to put in tiles and slag to provide support. Mr. Smith would then need to haul the dirt back to the property and smooth it out again to return it to its original condition.
It is the claimants contention that the respondent was negligent in failing to timely and adequately clean the ditch line and to remove the large rock blocking the ditch line. Its failure to do so caused the water to back up and form a pool. This caused the water to seep under ground and flow beneath County Route 13/9 through claimants’ property to the back yard and cause the property to start slipping toward the creek.
*90 Respondent asserts that the water pooling in the ditch line on County Route 13/9 was not the cause of the slip on claimants’ property. Respondent maintained the ditch line just as it maintains other ditch lines in the area. A back hoe was used to clean the ditch line as part of the routine maintenance. A copy of a DOH-12 dated July 19, 2000, was submitted in evidence of the work done.
Dr. George A. Hall, the Research and Manuals Engineer for respondent, testified as a geotechnical engineer. He explained that he made a site visit to observe the road, ditch line, and claimants’ property. He also took a soil sample from the ditch line while at the site. He described the slide on claimants’ property as having two toes at the bottom of the slope meaning that the slide developed in multiple sections. The material located in the slide is a shaley clay material. There was evidence presented that the slide had been present for a long time since trees in the area were leaning and bent, and in his opinion, this substantiates his position that there has been some hillside creep for several years. Although there was a saturation of the soil in the slide, it is his opinion that the pooling of the water in the ditch line of County Route 13/9 did not cause the slip on claimants’ property because it would have taken a matter of years for the pressure of pooling water in the ditch line to push water in the saturated soil to the point of causing a slide on claimants’ property. He explained that there will be natural ground water seepage in the whole area of the slide because it is a natural hillside drain and it would be expected to experience landslide activity. He also opined that the history of sewer leaks in the area possibly could be a contributing factor because the leaking water would be under additional pressure. It was his understanding that the sewer line had been in place for ten years, but he did not know what kind of pressure was on the line. Therefore, he concluded that the respondent’s action in allowing the water to pool in the ditch line on County Route 13/9 was not the cause of the slide which occurred on claimants’ property.
The Court has held in many previous claims that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. See Haught v. Dept. of Highways, 13 Ct.Cl. 237 (1980). In claims of this nature, the Court will examine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. See Rogers v. Div. of Highways, 21 Ct.Cl. 97 (1996). The Court also has held that where respondent sets in motion a slip by digging a ditch and allowing water to pool in the ditch which then causes a slip on a claimant’s property, the respondent is negligent in its actions and will be liable for the damages to the property owner. See Mount v. Div. Highways, Unpublished Opinion No. CC-96-578 (1999).
In the instant claim, the Court has reviewed the testimony and exhibits and the Court has difficulty with the conclusions put forth by respondent. In fact, there are times that the Court views a claim based upon common sense rather than scientific and technical theories. In this particular claim, the slip on claimants’ property became visibly worse as the pooling in the ditch line continued to occur. There is no dispute, even by respondent’s expert, that the water from the ditch line on County Route 1 3/9 seeps through the ground beneath the road toward the creek with claimants’ property between those two points. Therefore, it seems to the Court that the heavy rains created a saturated soil condition for all of the property in the area but especially for claimants’ hillside property which was already subject to slipping toward the creek. When respondent failed to respond to claimants’ complaints about the standing water in the ditch line, a condition developed which gives support to the claimants’ position that this water impacted the saturated water in the soil to increase the slide activity on claimants’ property. The Court is of the opinion that there was a saturation of the soil *91 and the pooling of the water in the ditch line did, in fact, contribute to the slide that occurred. It was the failure of respondent to maintain the ditch line on County Route 13/9 that brought about the pressure on the water in the soil in the area beneath the road and continuing throughout the soil on claimants’ property. Claimants took control of the situation effecting a remedy by removing the blockage in the ditch line. The Court can only conclude that the water in the ditch line brought about the slide on claimants’ property. Therefore, the Court finds that the negligence of the respondent in failing to respondent to claimants’ complaints brought about the damages on claimants’ property for which the respondent is liable.
In accordance with the finding of facts and conclusions of law the Court as stated herein above, the Court is of the opinion to and does make an award to claimants in the amount of $6,000.00.
Award of $6,000.00.